EJECTMENT.         White *vs* Nicholson.

*Case* 64.              ERROR TO THE CLAY CIRCUIT.

*County Court certificates. Removed certificates.*

*January* 30.  CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.  THIS writ of error is prosecuted to reverse a judgment against White, as defendant in an action of ejectment. On the trial the plaintiff read a patent to the lessor, Nicholson, bearing date "the 27th day of Feby., in the year of our Lord one thousand eight hundred and fourteen, and of the Commonwealth, the twenty second," purporting to be issued in virtue and in consideration of part of a removed certificate, No. 1408, *alias* 1399, (the State price paid without interest,) granted by the County Court of Warren, in July, 1815, agreeably to an act of Assembly, for settling and improving the vacant lands of this Commonwealth. The patent grants 200 acres of land in the county of Clay, by survey bearing date in 1810. And it was admitted that the defendant was in possession within its boundary, at the commencement of this action.

The defendant read a settlement certificate for 400 acres, bearing date in 1803, and granted by the County Court of Madison county, to James Heve; and it was admitted that in 1806, a survey had been made on said certificate, covering the land now in contest—that the defendant had been in actual possession of the land within the interference, for ten years prior to the institution of this suit, without any house on it, "but cleared and under fence," holding and claiming under the said certificate; and that he and those under whom he claims, have had actual possession of land within the survey for thirty years, and that at the date of the certificate Clay county was a part of Madison. The case was submitted to the Court instead of a jury. And a judgment having been rendered for the plaintiff, and a motion for a new trial overruled, the case is presented

to this Court, mainly upon the objection that the patent is void, and should have been so held by the Court below. The ground chiefly relied on in support of this objection, is that the patent shows upon its face that it is illegal, inasmuch as the alleged consideration on which it was founded, was itself wholly illegal and void. And that the patent being thus illegal on its face, may, and should, on the authority of the case of *Bledsoe's dev's.* vs *Wells*, (4 *Bibb*, 329,) be declared void even in this collateral proceeding. But before any question can arise as to the correctness of this conclusion, the premises on which it rests must be established. In support of these premises, it is contended—first, that in 1812, an act was passed, prohibiting the entry and survey of any certificate, original or removed, in any other county than that in which it was issued, or others formed out of it after the date of the certificate: (*Stat. Law*, 971.) And second, that as early as 1806, the power of granting certificates of removal was taken away from the County Courts, and vested in the Circuit Courts of the counties in which the land may lie, and for two years only: (*Stat. Law*, 759.) And third, that the several County Courts had no power, under the act of 1800, (*Stat. Law*, 941,) which first gave them authority on the subject, to issue a settlement certificate, except for lands within their own county, and had no power under the act of 1804, (*Stat. Law*, 951,) which alone gave them authority with respect to the withdrawal or removal of certificates, to authorize the location of any removed certificate, except in the county in which it was originally issued, that is in their own county.

. The argument in support of the two first of these grounds, assumes that the certificate in virtue of which the patent issued, was granted, or at any rate, removed in 1815, as stated in the patent. But that this date is a mistake either in the original patent, or in the copy used on the trial or in transcript before us, is evident from the fact that the patent itself was issued in the year 1814. And as the date of the patent is written out in words, referring to two epochs, and the date given to the certificate is in figures only, it may be assumed that

The court will not presume on account of a date of a remo-, val of a certificate for heads right land given in a patent that the court acted when it had no authority to grant removal, & declare a patent void.

the mistake is in the recited date of the certificate, rather than in the date of the patent itself. The fact insisted on, that in 1815 there was no power to grant such certificate, or to authorize the removal of one previously granted, corroborates the conclusion that the mistake is in the date given to the certificate, as upon the face of the patent it is manifest that the date of the certificate is not correctly stated, but that it was issued and removed at a period antecedent to the date of the patent, the recited date furnished no means of testing the legality of the certificate or of its removal. And as there should be no presumption that either of these acts was done either by the County or Circuit Court after their respective powers had ceased under the law, it cannot be said that the patent on its face shows that it was illegal on either of the two first grounds. If the patent had wholly omitted the date of the certificate, or left a blank for it which had never been filled up, the presumption should be, (at any rate in this collateral proceeding,) that the certificate had been issued and removed by a tribunal authorized to do these acts, if any was so authorized, and at a time when they might be legally done. And if the mistake may be corrected by conjecture, then as it should be assumed that the certificate was removed before the date of the survey in September, 1810, and while there was a legal authority to remove it; and as it may be presumed to have been granted so long before the removal as to have allowed the grantee an opportunity of ascertaining that he had by mistake located it on a military or other previous claim, or so long that he may have been evicted from his original location in the interval, then by taking as much of the recited date as would accord with these presumptions, the inference is that the certificate was granted in 1805, and that in reciting the date, the figure 1 has been placed before the figure 5, when it should have been a nought. And the date of the withdrawal, or removal of the certificate not being stated, the presumption is that it was legally authorized.

A county court certificate located in the coun-

There is no doubt that the inconsistency of the two dates on the face of the patent, authorizes the rejection

or correction of one of them by construction, if there be enough apparent in the instrument to determine which should be rejected, or to supply a correction of an apparent mistake. And under any construction authorized by this principle, the patent does not upon its face show a violation either of the act of 1812, or that of 1806, above referred to.

The third ground of alleged illegality in the patent, presents the question whether under the act of 1804, which authorizes the withdrawal of certificates located on a military or other appropriated lands, and their location upon other lands, a certificate issued by the County Court of Warren county, could after such withdrawal, be located upon land in the county of Clay, which as we judicially know, never was a part of the county of Warren. The second section of the act referred to, (*Stat. Law*, 951,) provides that when any claim (allowed by the County Courts,) has been, or shall be entered on any military or other appropriated land, on satisfactory proof being made, the County Courts shall permit such claims so entered, or such as shall be so entered, to be withdrawn and located on any unappropriated land. We think it manifest that the object of this act was to give to the party who had made his settlement and location on military or other appropriated lands, and obtained a certificate therefor, the right on discovering and proving the fact, to withdraw his certificate and re-locate it on other lands. This is apparent, not only from the nature of the object to be effected, which is for the exclusive benefit of the holder of the certificate, but from the imperative mandate that the County Courts shall permit the claim to be withdrawn and located on any other land. To insure the requisite certainty and publicity in regard to the location of these claims, and to prevent frauds either upon the Commonwealth or upon actual settlers, the act required the withdrawal of the claim or location, and the proof upon which it was to be allowed, and the re-location of the claim to be made in the County Courts. But while it was certainly appropriate that the proof and withdrawal should be made in the Court which had granted

the claim, and in which the land was situated, and while the objects of the act, and especially the security of actual settlers required that the re-location should be made in the Court of the county in which the land to be embraced by it was situated, and while it may be admitted that the Court of one county should not be presumed to have been authorized to receive the location of land in another county upon a withdrawn claim, and give a certificate thereof, any more than to give an original certificate for such land, we do not perceive any inconsistency in supposing that upon a certificate allowed to be withdrawn or removed by the proper Court, a re-location might be authorized by another Court, being the Court of the county in which the land to be thus located was actually situated. And although the language of the act directing that the County Courts shall permit the claim to be withdrawn and located on any unappropriated land, is susceptible of a construction which would confine the location, as well as the withdrawal, to the same Court, we are of opinion that such is not the necessary meaning of the words, nor their necessary operation in view of the object of the act. The act does not undertake to indicate the particular County Court in which the claim shall be withdrawn or re-located, but uses comprehensive terms showing only that both shall be done in the County Courts. If it had been intended that both must in all cases be done in the same Court, it would have been easy and natural to say so, and instead of the broad expression allowing the withdrawn claim to be located on any unappropriated land, the language would probably have been on any unappropriated land in the county, or in the same county. Then it is to be observed, that under the pre-existing system of granting settlement certificates by commissioners, the claims found to have been located on military or other appropriated lands, were allowed to be re-located in different counties, whence it would be naturally inferred, that as the act of 1804 did not prohibit it, the same might still be done. And the act of 1812, relied on as prohibiting it in future, proves that the practice had prevailed to some extent

at least, and impliedly sanctions it, so far as it had actually taken place before the date of the act.

We are of opinion, therefore, that the act of 1804 should not receive such a construction as would render wholly illegal and void the location of a withdrawn claim or certificate in a county different from that in which it was originally granted, but that it may, and should be understood, as by its own power, granting the right of re-location, upon the proof and withdrawal being made in the proper Court, leaving the re-location itself also to be made in the proper Court of the county in which the land to be thus located might be. This question was not presented in the case of *Walker* vs *Monroe*, (2 *Marsh.*, 405-6,) but the question was, whether the re-location must be made in the Court of the county where the land lay, or merely with the surveyor of that county, and the few words applicable to the present question, were not essential to the decision of the one then before the Court, and being only used in argument of that question, and without special reference to what might be done by different Courts, without respect to the withdrawal and re-location of the same claim, are not entitled to any decisive influence. And although the opinion in the case of *Sutton* vs *Menser*, (6 *B. Monroe*, 439,) intimates that the re-location of a removed certificate in a different county, would be without authority or color of authority. Yet as the case of such removal was not then presented to the Court, and as the intimation was given with respect to a certificate issued by the commissioners prior to 1800, and the statutes relating to such certificates enacted prior to 1800, clearly provide for their re-location in a different county, we cannot regard this intimation as decisive.

We do not, therefore, feel authorized on any ground, to declare the patent void on its face, and as it could not be declared void in this proceeding on account of any fact not apparent on its face, we need only say further, that its interference with the certificate and survey relied on by the defendant, even if prohibited, which we

do not decide, would not be a ground for declaring it void in this action.

The proof does not make out a case of such possession as would bar the action, either under the seven year's or the twenty year's limitation.

Wherefore, the judgment is affirmed.

*B. Y. Owsley* for plaintiff.

