No. 35.—DOE *ex dem.* MICHAEL SMALLEY Jr. and ANDREW SCOTT, plaintiffs in error *vs.* ROE & DANIEL McKILVAIN, defendants.

[1.] Where an instrument was offered as a grant from the State, purporting to be under seal, yet having no impression of the Great Seal attached, but in all other respects regular and formal, and having in its appearance no marks of suspicion; upon proof of the existence of such original grant by the production of a copy from the Surveyor General's office, and upon proof by plaintiff's lessor, that he had made diligent inquiry of the grantee, from whom he had received the instrument in that state, for the seal, and was informed by him that it had been lost or destroyed: *Held*, that the instrument might properly be admitted in evidence, as a grant from the State.

[2.] The signature of the Governor's Secretary is not necessary to the validity of a grant, and therefore not material; and as a consequence, a variance between the name of the Secretary as signed to the original, and the copy grant, where the two agree in all other respects, is not such a material variance as should cause a Court to reject the copy (issued from the Surveyor General's office) as evidence, that the original at the same time tendered, had been there registered.

Ejectment in Dooly Superior Court. Tried before Judge POWERS, April Term, 1853.

This cause being before the jury for trial, the plaintiff tendered in evidence a copy grant from the State to Michael Smalley, Jr. covering the premises in dispute. The copy was tendered for the purpose of laying a foundation to enable Andrew Scott, one of the lessors of plaintiff, to make an affidavit touching the mutilation of the original, which wanted the Great Seal of the State.

Scott then stated on oath that he received the original grant

(which was produced in Court) from Michael Smalley, Jr.; that the Great Seal was then wanting to said grant, and that he had made search for it and could not find it, and that said Smalley, on inquiry, had told him that the Seal was lost or destroyed.    The original plot and grant were then tendered by plaintiff, which being objected to, the Court required the copy to be tendered at the same time, to which plaintiff objected.— The original and copy being then offered together, were objected to by defendant, on the ground of variance between them in this : that the original was attested by E. H. Pierce, Secretary of the Executive Department, while the copy purported to have been attested by E. Wood, S. E. D.    The objection was sustained by the Court, and the plaintiff suffered a non-suit and excepted to said rulings of the Court.

WARREN & HUMPHRIES, MILLER & HALL, for plaintiff in error.

BROWN, STUBBS & HILL, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] We are of opinion that the Court below should have admitted the instrument tendered, as a grant from the State to Michael Smalley, after the evidence accounting for its mutilation.

Except as to the loss of the wax, and the impression of the Great Seal thereon, the instrument seems to have had the appearance of being genuine.    It was in all other respects regular and formal, and purported to be under the Great Seal of the State.

The plaintiff's lessor, Andrew Scott, proposed to prove the existence of an original grant, such as was offered, by a copy from the Surveyor General's office, which he tendered.    He then accounted for the loss of the Seal, by stating upon oath, that he had received the instrument from Michael Smalley, the grantee, the Seal being absent therefrom; that he had made

the most diligent inquiry of Michael Smalley, and was informed by him, that the same was lost or destroyed.

This seems to have been sufficiently exhausting the sources of information in endeavoring to account for the loss of the Seal; and after the above proof of the grant's existence, and the loss of the Seal, according to the modern rules of evidence in such cases, we think the Court might very properly have allowed the instrument to go as evidence to the jury.

This was not an alteration or change in the instrument, which might be supposed to be suggestive of fraud, or improper design. It was the probable result only of accident, or the wasting hand of time. In this view, it would seem the more reasonable, that upon such testimony, this instrument should have been submitted for what it purported to be, viz : a grant from the State. (1 *Greenleaf Ev.* 566.)

If the whole instrument had been so mutilated that it could not have been read in all its parts, or so that fragments were entirely lost, and the plaintiff had in the same way (as above stated) made proof of its original existence, that he had received it thus mutilated from the grantee; and that upon diligent inquiry he had learned from that grantee, that it was mutilated or destroyed by accident or time in his possession, there can be no doubt that the copy (which has no seal affixed) would have been received as good secondary evidence. If so, when the instrument has been mutilated by loss of the Seal only, and exactly similar proof is made, *a fortiori*, the instrument itself should be good evidence.

[2.] We think that the variance as to the name of the Secretary of the Executive Department should not have been allowed to influence this question.

This signature of the Secretary is altogether an immaterial feature of the grant. It is the signature of the Governor, and the Great Seal, which gives it effect and validity.

It is possible, that according to practice, one Secretary may have sometimes endorsed this memorandum of attestation upon the original grant, and another upon the register. However this may be, as in our opinion, the Secretary's signature is en-

tirely immaterial, and as the two papers in this case entirely coincided in all other respects, the paper offered as the copy-grant might have been very well received as such, for the purpose for which it was offered.

Let the judgment be reversed.