# CHARLESTON.

JARRETT *v*. STEVENS.

Submitted January 25, 1892.—Decided April 9, 1892.

1. EJECTMENT—DECLARATION—PLEADING.
    An allegation in a declaration in ejectment that the plaintiff "was possessed in fee" of the land is a sufficient allegation that that the plaintiff claims in fee.

2. SEAL.
    Commonwealth's grant without seal is invalid.

3. ADVERSE POSSESSION—BAR.
    To tack different adverse possessions to make up the period of bar the persons holding such possessions must be connected by privity of title or claim.

4. ADVERSE POSSESSION—BAR.
    Adversary possession must be continuous for the period prescibed as a bar.

5. ADVERSE POSSESSION—BAR.
    Where there is no paper giving color of title defining the extent of adversary possession, but it is only under claim of title,

the possession will be limited to inclosure, clearing, or actual improvement.

6. Forfeiture—Title.

A person claiming the title to land vested in the State under the second class specified in section 3, Art. XIII, of the constitution need not have had possession.

7. Ejectment—Outstanding Title.

An outstanding title, which will defeat an action of ejectment must be one that is subsisting and superior at the commencement of the action.

8. Instructions.

It is the right of counsel to submit instructions, and have them passed on by the Court; but where they are submitted after the jury have retired, and the Court refuses to receive them, this Court will not reverse the trial-court, unless it affirmatively appear that it manifestly abused its large discretion in such a matter.

*J. W. Davis* and *W. P. Rucker* for plaintiff in error cited Hutch. Land Tit. § 273; 24 W. Va. 238; Hutch. Land Tit. § 347; Id. 368–380; Id. 384; Id. 365; 60 Mo. 420; 38 Tex. 591; 50 Mo. 549; 1 Stark. Ev. 215; 7 Cow. 239; 5 Mass. 334; 2 Caine 129; 12 S. E. Rep. 832.

*J. W. Harris,* for defendant in error cited 25 W. Va. 131; 13 S. E. Rep. 352; 15 East 292; 3 A. K. Marsh. 322; 17 Md. 49; 91 Am. Dec. 523; 2 Greenl. Ev. § 278; 1 Greenl. Ev. § 103 *et seq.;* 3 Waite Act. & Def. 109; 78 Va. 602: 13 S. E. Rep. 33; Const. Art. XIII, s. 3.

Brannon, Judge:

In an action of ejectment in the Circuit Court of Greenbrier by Joseph Jarrett against Joseph Stevens, there was a judgment for plaintiff, and Stevens brought the case here.

The declaration alleges that the plaintiff "was possessed in fee" of the land in suit, and it is urged that it is bad in the fact that it does not state that he claimed title in fee, as the statute requires it to state "whether he claims in fee, or for his life, or the life of another, or for years, specifying such lives, or the duration of the term."

The statute does not have for its object that the declaration shall state that he claims, for the plaintiff's suing shows an intent to claim; but the object is to show the duration of his estate, so as to show what judgment shall

be given, and the effect of the recovery. Saying that the plaintiff was possessed in fee is equivalent, in effect, to an allegation that he was seised in fee, or that he owned or claimed in fee. Possession is one of the elements of title, and is *prima facie* evidence of title; and when possession and right unite the title is perfect—a conjunction of right and possession.

Possession implies that it is held under title. 20 Vin. Abr. 278; 2 Bl. Comm. b. 3, p. 199. Steph. Pl. p. 286, speaking of alleging title, lays down that it is often sufficient to allege a title of possession, and that, as to corporeal hereditaments, the form is, either to allege that the close was the "close of" the plaintiff, or that he was "lawfully possessed of a certain close." Ejectment was a possessory action, and, though now the effect of its judgment is that of a real action, yet for this question we may still regard it possessory, in that it alleges a trespass against the possession, and seeks recovery of possession. This declaration alleges not merely that plaintiff was in possession, and that it was invaded by wrongful entry, but that he was possessed in fee, importing a title or claim in fee. The forms of precedents alleged that the plaintiff was possessed for the term specified. Rob. Forms, 171. Here the allegation is that he "was possessed in fee." Surely there can be no misunderstanding as to the extent of the plaintiff's claim as to duration of his estate. The form might be improved, under our statute, by making the allegation that plaintiff was possessed of and claims in fee certain land, but this form is one extensively used for years in this State, and I think is good.

Objection is made to the admission of a deed from Sarah Massey to P. L. Massey, and from said Massey to H. O. Middleton. As they were left in evidence only as color of title, and no evidence whatever was given touching color of title under them, they are immaterial. As color of title it would make no difference whether the recitals in the Sarah Massey deed are evidence or not. The question of authentication of the other deed might arise had any evidence of possession under it been given.

I notice next the defence made by Stevens, based on an

alleged outstanding superior title preventing a recovery by the plaintiff. On the trial plaintiff first introduced a grant from Virginia to William R. Wood, dated August 1, 1857, for two hundred and sixty eight acres of land in Greenbrier county, and papers to connect himself with said grant; and then the plaintiff also introduced a grant from Virginia to Joseph Massey, dated November 20, 1797, for six thousand acres, and papers to connect himself with that grant. Afterwards the defendant moved to exclude from the jury the Massey grant and all papers introduced by plaintiff to connect himself with it as tending to show title in the plaintiff, and the court excluded the same but left said papers and grant in evidence as color of title.

It is upon this Massey grant that the defendant relied to show a superior outstanding title to defeat the plaintiff's recovery. The plaintiff contends that, as the Massey grant was only before the jury to show color of title, and as the defendant did not offer it himself to show outstanding title, it can not be considered for that purpose. As the defendant by his motion obtained the action of the court excluding the Massey grant, and it was left in the case as documentary evidence for one only purpose—color of title—and he did not ask its introduction, we are of opinion it was in evidence for such limited purpose, and that the defendant having excluded it is estopped from making such use of it.

But, according to the copy of the grant, the grant was without the seal of the commonwealth. The act of May, 1779, in the form of grant, and by express enactment, required such seal. The grant is an act of great solemnity, and can only be issued as the law directs. While the commonweath's grant can not generally be collaterally attacked, yet, if it be void on its face, it may be. 2 Lomax, Dig. 388; *Patterson* v. *Wynn,* 11 Wheat. 380; *Alexander* v. *Greenup*, 1 Munf. 134; *Bledsoe* v. *Wells*, 4 Bibb, 329. In such case we have no need to bring in matters *dehors* the grant, but itself affords record evidence of the matter invalidating it.

In the Virginia Court of Appeals in *Carter* v. *Edwards*, 13 S. E. Rep. 352, it seems to be conceded that the want of a seal would invalidate a grant. A deed of an individual

will not pass land without seal. *Cromwell* v. *Tate*, 7 Leigh. 301 ; *Pratt* v. *Clemens*, 4 W. Va. 443; 2 Minor, Inst. 651. I do not see why it is not indispensable in a commonwealth's grant. It is the highest evidence of its authority in the act, the *signum* or mark of the genuineness of its act, and of its finality. It is the sign of sovereignty.

In *Doe* v. *Roe*, 14 Ga. 252, though the decision was that there was evidence to show there once had been a seal, it seems conceded that a seal is indispensable to a state grant of land. The court said : "It is the signature of the governor and the great seal which give it effect and validity."

In *Hunter* v. *Williams*, 1 Hawks. 221, the court said public lands could be granted only as the legislature authorized; that, as that required a grant to be authenticated by the governor, and countersigned by the secretary, and as the grant involved was not so countersigned, it was the same as if no mode had been adopted, and was held void. My own opinion is, the want of a seal invalidates a patent. If so, this grant would not show legal title outstanding.

Now, as to instructions refused defendant. They were based on the Massey grant, and propound legal propositions of outstanding superior title arising from it; and whether these instructions do or do not present the law correctly, as there was no basis for them in the evidence, for reasons above given, the defendant is not prejudiced by their refusal.

Next, as to instructions given on motion of plaintiff. The defendants relied upon adverse possession. Without detailing evidence, it is enough to say that Stevens sought to show that he himself had held possession of a six and a half acre field long enough to protect himself against the action, and also sought to connect or tack to his possession a former possession by Henry Forren ; and there was evidence tending to show that Forren held under John I. Schermerhorn, while he derived title constituting his color of title from a judicial sale of land of John F. Schermerhorn and Eliza L. Schermerhorn.

Plaintiff's instruction No. 1 :

"If the jury believe that Henry Forren went into possession of the six and a half acres of land in controversy under

one John I. Schermerhorn, and that the defendant afterwards took possession under claim or color of title derived from John F. Schermerhorn, and that there was no privity of estate between John I. and John F. Schermerhorn, then the possession of said Forren of said six and a half acres under John I. S. can avail the defendant nothing in his defence of adversary possession under claim or color of title under John F. Schermerhorn ; that these two possessions can not be tacked onto each other, so as to make a continuity of possession, unless there is a privity of estate, or the two titles are connected."

This instruction seems unobjectionable. Where there are adverse possessions by different persons, and it is proposed to tack or add them together, so as to make up the period prescribed by the statute as a bar, this can not be done if they were possessions of strangers to each other, but they must be connected by privity in estate. Hutch. Land. Tit. § 338; Ang. Lim. § 413.

Plaintiff's instruction No. 2:

"That, even though the jury should believe that Forren had possession of the six and one half acres of land prior to the war, either by himself or by those under whom he claims, and that the possession was abandoned, and that Stevens took possession after the war, this second possession can not be tacked onto the first for the purpose of his holding the land in controversy by possession, but he must have had actual, notorious, open, exclusive, continuous, and visible possession for ten years next prior to the institution of this suit under color or claim of title."

There was evidence tending to show the hypothesis assumed by this instruction, and I think it correct in law. The very definition of adversary possession requires that it be continuous. If there be a break, its continuity is destroyed. Two parcels of possession, separated by a gap or chasm arising from abandonment, can not be tacked. *Core* v. *Faupel*, 24 W. Va. 238, 246 ; Hutch. Land Tit. § 383.

Plaintiff's instruction No. 3 :

"The court instructs the jury that any possession by any party of the land in controversy other than Stevens can not inure to the benefit of Stevens so as to lengthen and

strengthen his possession, unless he connects the title by which he claimed under the title of such other person."

Very certainly, to enable one person to unite to his possession that of a prior occupant, they must not be strangers, but there must be a relation of privity between them, as above stated. The word "under" does not, as suggested, render the instruction unintelligible, though it might have been better phrased.

Plaintiff's instruction No. 4:

"That Stevens can only show adversary possession of land to which he has shown color of title, or which he has had under fence, and if he claims by fence he can only claim to the extent of actual inclosure."

This, as applied to the case, is not erroneous. A person, if he have color of title—a paper giving him color and boundary—has the benefit of the statute to the boundary defined in the paper giving such color; but, if he have no such paper, and thus does not show color of title, but relies only on claim of title, then he can get the benefit of the statute no further than his claim is defined by actuas *pedis positio,* actual possession, which must be marked by a fence or clearing or cultivation or something else visible, actual and notorious, so as to be tantamount thereto. *Oney* v. *Clendennin,* 28 W. Va. 35, 52; *Adams* v. *Alkire,* 20 W. Va. 480. True, this instruction limits claim to a fence, but, as the field was inclosed by fence, and there was no evidence of any other character or sign of claim, this does not render it erroneous.

Plaintiff's instruction No. 5 is only a statement in another form of instruction No. 1.

As instruction 6 is not made the subject of definite criticism in the brief of appellant's counsel, and we regard it good, it is useless to insert or discuss it, since it involves nothing novel or important in principle.

As to instruction 7, I see no objection to it. None is suggested, except that it assumes that Jarrett was in possession in telling the jury that the forfeiture of the Schermerhorn land, under which defendant claimed, inured to the benefit of Jarrett, if they believed, among other things, that he has paid all State taxes charged or chargeable on said land

in controversy for five years preceding the bringing of this suit;" but the answer is that in class second, specified in section 3, Art. XIII, of the Constitution, as persons taking the benefit of title vested in the State, possession is not required as a requisite.

Plaintiff's instruction 8 :

"The court instructs the jury that the production of a patent other than that of Woods' patent to the two hundred and sixty eight acres will not affect the title of the plaintiff under said Woods' patent, unless the title granted by the elder patent was a subsisting title at the time this suit was brought, under which the holder of said title would have a right to hold the land in question." On its face there is no objection to this instruction. Wait, Act. & Def. 109 ; *Wilcher* v. *Robertson,* 78 Va. 602. Question might be raised on the theory that there was no evidence to show the extinction or abandonment of the Massey grant; but, as it was not to be considered as a paper passing title, that matter is immaterial.

We see no objections to plaintiff's instructions 9 and 10, and, as they present nothing important or novel in a legal point of view, it is not deemed material to insert them. Nothing is said against instruction 11. There is an objection made to all the instructions of plaintiff except one, on the ground that they use the language, "if the jury believe," instead of, "if the jury believe from the evidence." A jury is presumed to know that it can believe and act only on the evidence. I think this objection not tenable. As we regard the Massey grant not in the case for title purposes, a remark by the judge that he had given no instruction that it showed outstanding title, but that that was a question for the jury, is immaterial, and not necessary to be considered, as it bore entirely on that feature of the case.

The defendant, after the jury retired to consider of their verdict, asked an instruction, which was refused. No reason is perceived why it was not sooner asked. The deed from Woodson to Stephenson, on which it was based, had been during the trial introduced in evidence, and by the defendant. This Court, in *Tully* v. *Despard,* 31 W. Va. 970 (6 S. E. Rep. 927) held that, where instructions are sub-

mitted after the jury had been directed to retire, and they were refused because offered too late, the judgment will not for that cause be reversed, unless it affirmatively appeared that the court abused manifestly the large discretion vested in it in respect to its action in the matter. In this case the jury had retired. We do not see that the court abused its discretion. We see no excuse for delay. We could not reverse for this cause, even if we should think the instruction in all respects proper.

As a ground for a new trial it is contended that the chancery proceeding of Jarrett's administrators against Jarrett's heirs did not operate to sell the land in controversy, which came to the plaintiff under that sale ; but we think it sufficiently appears that the consent decree and proceedings therein did sell this land. A point is here made that a deed from Middleton to Jarrett—a link in the chain of title—was not accepted by Jarrett. It was recorded. There is no evidence of dissent by Jarrett, except the clerk's certificate, made several months after its admission to record, that Jarrett disaffirmed and refused it. This certificate is no evidence. No law authorized the clerk to make it.

As to the motion for a new trial upon the ground that the verdict is contrary to law and evidence. There was a very considerable amount of oral evidence on both sides upon a material point in the case, adversary possession set up by defendant, and it was conflicting. That question was peculiarly one for a jury, and we can not, for this cause, disturb the verdict.

AFFIRMED.